JACOB BEIDLER

*v.*

DANIEL H. KOCHERSPERGER, Treasurer of Cook County.

*Opinion filed February 14, 1898.*

1. REVENUE—*statute imposes absolute duty on county board to review assessments of property.* Under section 97 of the Revenue act (Rev. Stat. 1874, p. 873,) an absolute duty is imposed upon the county board to entertain, consider and determine the applications of parties feeling themselves aggrieved by reason of the assessor's alleged over-valuation of their property.

2. MANDAMUS—*mandamus lies to compel county board to review assessments. Mandamus* will lie to compel the county board to perform the duty imposed upon it by statute to hear and determine complaints of alleged over-valuation of property by the assessor.

3. INJUNCTION—*tax cannot be enjoined because county board refused to review assessment.* One who fails to apply for *mandamus* on refusal of the county board to consider his grievance as to an alleged over-valuation of his property by the assessor, cannot, in the absence of fraud, accident or mistake, enjoin the collection of the tax.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

MASON BROS., (HENRY B. MASON, of counsel,) for appellant.

FRANK L. SHEPARD, Ass't County Attorney, (ROBERT S. ILES, County Attorney, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county sustaining a demurrer to a bill in chancery exhibited by the appellant against the appellee, the county treasurer and *ex officio* collector of Cook county. The bill was filed on February 13, 1897, and the prayer is, the appellee, as collector, be enjoined from collecting from the appellant the taxes for the year 1896 on certain real estate described in the bill, and that the circuit court either review the assessment of said real estate for

the purposes of taxation and ascertain and declare the amount at which it should have been assessed, or should enjoin the collection of said taxes until such time as the board of supervisors of said county should grant appellant a hearing and ascertain the correct assessable valuation of the said real estate, and for further and other relief, etc.

The bill alleges the appellant was the owner of certain real estate situate in the town of West Chicago subject to be listed and assessed for taxation in the year 1896; that the assessor of the town assessed his said property at a valuation higher in proportion than other property in the same town and neighborhood, and that he applied to the assessor, town clerk and supervisor of the town, when they convened as a board to review the assessments made by the assessor, to have the assessment of his said property revised and reduced; that said board considered his application but declined to afford him any relief, and confirmed and approved the assessment; that he appeared before the board of supervisors of the county at the session of said board at which it was required by the statute to receive, hear and consider complaints with regard to the assessments of property, and filed a written application to have the assessment of his property considered, reviewed and revised by the said board; that notice of his said application was given in writing to the assessor and said board of review of said town of West Chicago, and that said board of supervisors referred his said application to a committee created by the said board for the purpose of hearing and considering the same, and that on the 3d day of September, 1896, complainant appeared before the said committee and introduced evidence in support of his contention that his property was overvalued, and that said committee, after hearing said evidence, took his case under advisement; that while his application was pending before the said committee, the said board of supervisors adopted a general resolution

declaring that the assessments returned by the assessors in each and all of the towns of Cook county were approved, and declared to be the assessments of all property in each of said towns for the purposes of taxation in that year; that said committee before whom his said application was pending and undetermined deemed said resolution adopted by the said board precluded them from further considering or determining his complaint, and so reported to the board on the 21st day of September, 1896, and that said board adopted the report of the said committee and refused to give his application and complaint a hearing.

It is made the legal duty of boards of supervisors, by section 97 of chapter 120 of the Revised Statutes, entitled "Revenue," to entertain the applications of property owners and review the assessments of property assessed for taxation, and correct the assessment thereof, if it appears the property has been over-valued for the purposes of assessment. Accepting, as we must, the allegations of the bill to be true, it appears the board of supervisors did not consider appellant's application, or the evidence in support thereof, and did not review the assessment of his property, as the statute made it its duty to do, but that it disregarded his application and the evidence that he produced in support of his alleged grievance. Appellant took no steps to enforce the performance of this duty by the board of supervisors, and did nothing further in the matter until the taxes for the year 1896 had been extended against his property, and the collector of taxes, armed with a warrant authorizing him to make and enforce collection of the taxes so extended, endeavored to enforce payment from him, and then appellant sought by this bill to invoke the aid of a court of chancery to restrain the collector and require the board to act. The circuit court held the allegations of the bill did not make a case cognizable in equity or justify the exercise of the extraordinary restraining powers of the court. The sole

question presented by the record is, whether this ruling of the court is correct.

The statute imposed upon the board of supervisors as an absolute duty, to entertain, consider and determine the application of appellant for relief with respect of the alleged over-valuation of his property. Courts of law possessed ample power to enforce the performance of this duty by the board. Appellant could have applied to such courts for a writ of *mandamus* to compel the board to perform the duty so charged upon it by the statute,—that is, to hear, consider and decide as to the alleged grievance. The case of *Chicago, Burlington and Quincy Railroad Co.* v. *Wilson,* 17 Ill. 123, was a petition for a *mandamus* to compel a judge of the circuit court to appoint certain commissioners to appraise the damages which the owners of certain premises would sustain by having their property taken by the railroad company, and we there said (p. 128): "The remaining objection urged is, that in determining whether such a case was made before him as required the appointment of commissioners, the circuit judge acted judicially, and in such a case we cannot grant a *mandamus* to require him to reverse his decision. Granting the assumption, and the conclusion legitimately follows. We cannot by *mandamus* control the judicial action of any inferior tribunal. We can, in such a case, only set it in motion, and require it to act one way or the other, but without determining how it shall act. And so, too, where the inferior tribunal is vested with a discretion in the performance of a duty imposed by the law; we can only compel the performance of the duty, without controlling that discretion or saying how the duty shall be performed." In *People ex rel.* v. *Dental Examiners,* 110 Ill. 180, we said (p. 185): "The office of the writ of *mandamus* is, in general, to compel the performance of mere ministerial acts. It lies, however, also to subordinate judicial tribunals to compel them to act where it is their duty to act, but never to require them to decide in

a particular manner." The same principle was declared and enforced in *People* v. *Crabb*, 156 Ill. 155, and *People ex rel.* v. *Gibbons*, 161 id. 510.

It is the policy of our law the whole matter of the valuation of property for taxation shall be committed to the control of the assessor, the board of review and the board of supervisors of the respective counties. (*People ex rel.* v. *Lots in Ashley*, 122 Ill. 297.) It was therefore incumbent upon the appellant to have availed himself of the ample and adequate remedy of the writ of *mandamus* to secure action on the part of the board of supervisors, in order that his grievances, if any he justly had, should be heard and determined. The law gave him his day in court. Neither fraud, accident nor mistake of fact intervened to prevent or excuse him from availing himself of his legal right. He did not seek his legal remedy, and, whether he misconceived the law or was simply negligent, it is well settled he cannot invoke the aid of a court of chancery to relieve him. *Lucas* v. *Spencer*, 27 Ill. 15; *Albro* v. *Dayton*, 28 id. 325; *Carney* v. *Village of Marseilles*, 136 id. 401; *Bardonski* v. *Bardonski*, 144 id. 284.

Counsel for appellant cite in their brief a number of cases decided by this court, which, in their view, sustain their contention that a court of equity has jurisdiction to review and revise an assessment of property for taxation. We have examined these cases, and find, in each case where the complaint was the property had been overvalued, that jurisdiction in equity attached by reason of some circumstance of fraud, accident or mistake, which operated to prevent the property owner from seeking relief at the hands of the board of review or board of supervisors. The other of the cases cited involved either the legality of the tax or the question whether the property was exempt from taxation.

The decree is affirmed.

*Decree affirmed.*